UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DARNELL TATEM,
    *Plaintiff*,

v.      No. 3:18-cv-382 (VAB)

BRIAN PERELMUTER,
    *Defendant*.

## INITIAL REVIEW ORDER

On March 5, 2018, Darnell Tatem ("Plaintiff") sued Dr. Brian Perelmuter ("Defendant"), alleging deliberate indifference to his serious medical needs and violations of his civil rights under 42 U.S.C. § 1983. *See* Complaint, filed Mar. 5, 2018 ("Compl."), ECF No. 1. Mr. Tatem has also moved for appointment of counsel.[1] *See* Motion to Appoint Counsel, dated Mar. 6, 2018 ("Mot."), ECF No. 6.

For the reasons explained below, the Complaint must be **DISMISSED** under 28 U.S.C. § 1915A(b) for lack of standing and failure to state a claim upon which relief may be granted. Accordingly, Mr. Tatem's motion for appointment of counsel is **DENIED** as moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

Mr. Tatem alleges that, on or around July 2, 2015, he sought medical treatment for "a large mass that had grown within and around his left jaw bone," and was taken to the University of Connecticut Health Center for an "Imaging Test/ CT Scan." Compl. ¶ 8. According to Mr. Tatem, that scan was diagnosed as "[i]ncreased sclerosis, subtle widening and multiple medullary lucencies [sic] develpoment [sic] in the body of the left mandible with a sinus tract.

---

[1] Mr. Tatem is proceeding *pro se*. He is currently incarcerated at the Cheshire Correctional Institution. Compl. ¶ 6.

Findings are most suggestive of chronic osteomyelitis but considering plaintiffs [sic] history, osteoradionecrosis could not be excluded." [2] *Id.* ¶ 9.

On July 15, 2015, Mr. Tatem alleges that "the above diagnosis was forwarded to MD. Perelmuter . . . from the University of Connecticut Health Center." *Id.* ¶ 10. Mr. Tatem claims that Dr. Perelmuter "never followed up" with him and that his jaw "subsequently developed into an infection resulting in the plaintiff requiring a four week around the clock IV-treatment to clear the infection." *Id.* ¶ 11. Mr. Tatem claims he did not learn about "the July 2015 diagnosis" until "over a year later." *Id.* ¶ 12.

Mr. Tatem claims that Dr. Perelmuter's failure to follow up "resulted not just in an infection, but months of not being able to eat food or chew without pain" and severe discomfort. *Id.* ¶ 13. According to Mr. Tatem, Dr. Perelmuter was at all times relevant to the Complaint "a dentist employed through the University of Connecticut Health Center/Correctional Managed Health Care and assigned to Dental Services" at the Cheshire Correctional Institution. *Id.* ¶ 7. "As a dentist, the defendant was responsible for overseeing and administrating medical care to inmates in accordance with acceptable standards of practice governing the profession." *Id.* Mr. Tatem does not, however, allege facts suggesting that Dr. Perelmuter was responsible for Mr. Tatem's treatment on or around July 2, 2015—or at any point thereafter.

Mr. Tatem attached a one-page record to the Complaint, entitled "University of Connecticut Health Center – Correctional Managed Health Care – UR Request Response." *See*

---

[2] Osteomyelitis is an infection or inflammation of the bone or bone marrow. *See Estiverne v. Esernio-Jenssen*, 910 F. Supp. 2d 434, 437 n.3 (E.D.N.Y. 2012); *In re Fosamax Prods. Liab. Litig.*, 807 F. Supp. 2d 168, 174 (S.D.N.Y. 2011). Osteoradionecrosis is "'a condition involving dead bone in the jaw caused by exposure to radiation.'" *Bee v. Novartis Pharm. Corp.*, 18 F. Supp. 3d 268, 302 n.27 (E.D.N.Y. 2014) (quoting *Harvey v. Novartis Pharm. Corp.*, 895 F. Supp. 2d 1206, 1213 (N.D. Ala. 2012)).

2

*id.* at 7. The significance of this record is unclear on its face, but it appears to have been generated on May 27, 2016. *Id.*

### B. Procedural History

On March 5, 2018, Mr. Tatem filed the Complaint, alleging Dr. Perelmuter was deliberately indifferent to his serious medical needs and violated his civil rights under 42 U.S.C. § 1983.[3] *See* Compl. In his Complaint, Mr. Tatem seeks compensatory damages "in an amount this Court shall consider to be just and fair," punitive damages of $5,000,000, and "such other relief as this Court shall consider to be fair and equitable." *Id.* at 3. Mr. Tatem states that he is suing Dr. Perelmuter in his individual capacity. *Id.* ¶ 7.

On March 5, 2018, Mr. Tatem also moved for leave to proceed *in forma pauperis*. *See* Motion for Leave to Proceed *in forma pauperis*, dated Mar. 5, 2018, ECF No. 2. On March 7, 2018, the Court referred this motion to Magistrate Judge William I. Garfinkel. Order Referring Case, dated Mar. 7, 2018, ECF No. 7. On March 14, 2018, Magistrate Judge Garfinkel granted Mr. Tatem's motion. Order Granting Motion for Leave to Proceed *in forma pauperis*, dated Mar. 14, 2018, ECF No. 8.

On March 6, 2018, Mr. Tatem moved for appointment of counsel, arguing that the Inmates' Legal Aid Program (ILAP) was unable to provide him with adequate legal assistance, and that he has "significant neurological issues that prevent him from understanding proper processes for filing his lawsuit." *See* Mot. ¶¶ 14–15.

---

[3] While Mr. Tatem alleges that the Court's jurisdiction arises under a multitude of statutes, including non-jurisdictional statutes such as 42 U.S.C.§§ 1985, 1986, and 1988, he only makes a claim under 42 U.S.C. § 1983. The Court will therefore only evaluate whether the Complaint states a claim under § 1983.

3

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). Implicit in this review is a requirement that courts assess whether plaintiffs have adequately pleaded that they satisfy the threshold requirement of Article III standing. *See, e.g.*, *Mancini v. Schiro*, No. 14-cv-767, 2014 WL 726784, at *2 (E.D.N.Y. Feb. 25, 2014) (Gleeson, J.) (dismissing *pro se* prisoner's complaint for lack of standing); *Sneed v. Faulk*, No. 2:14-cv-2478 (GEB)(KJN), 2015 WL 1956881, at *2 (E.D. Cal. Apr. 29, 2015) (dismissing *pro se* prisoner's complaint because it failed to adequately allege an injury in fact requiring redress); *see also Blasingame v. Sisto*, No. CIV S-10-514 (CKD), 2011 WL 4344122, at *3 (E.D. Cal. Sept. 14, 2011) ("Federal courts are required sua sponte to examine jurisdictional issues such as standing . . . . The court's duty to question its own jurisdiction obtains no less in a screening analysis under 28 U.S.C. § 1915A, and the lack of jurisdiction here . . . is apparent.") (citation, internal quotation marks, and alterations omitted).

Standing is a constitutional requirement rooted in Article III of the United States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). "Standing, moreover, like other jurisdictional inquiries, cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record." *Thompson v. Cty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) (citation, internal quotation marks and alterations omitted).

To demonstrate standing, a plaintiff must allege an injury-in-fact that is fairly traceable to defendant's conduct and is likely to be redressed by judicial action. *Allen v. Wright*, 468 U.S. 737, 751 (1984); *see also Lujan*, 504 U.S. at 560–61 ("Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.' Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'") (internal citations omitted).

"[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (quoting *Lujan*, 504 U.S. at 561).

To sufficiently plead causation for standing purposes, a plaintiff need not show proximate cause, but simply that the injury is "fairly traceable" to defendant's conduct. *See Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013) (explaining that the fairly traceable standard is lower than that of proximate cause) (citations omitted). Thus, "the fact that there is an intervening cause of the plaintiff's injury may foreclose a finding of proximate case but is not necessarily a basis for finding that the injury is not 'fairly traceable' to the acts of the defendant." *Id.* The

5

Supreme Court has therefore described plaintiff's burden of showing causation at this stage of the litigation as "relatively modest." *Bennett v. Spear*, 520 U.S. 154, 171 (1997). However, if a plaintiff cannot meet this burden, the court must dismiss the case for lack of standing.

## III. DISCUSSION

Mr. Tatem generally contends that Dr. Perelmuter, who he alleges is an employee of the State of Connecticut employee, was deliberately indifferent to the mass in the lower left side of his jaw when he neglected to follow-up with him with regard to the results of the CT scan, and that this deliberate indifference caused his subsequent injury.

Even assuming that the condition suffered by Mr. Tatem in his lower jaw was serious, he has not alleged sufficient facts to demonstrate that he has standing to sue. While Mr. Tatem does state an injury-in-fact, he does not allege well-pleaded facts suggesting that the injury was fairly traceable to any conduct of Dr. Perelmuter.

Mr. Tatem does not assert that he sought dental treatment or was ever seen by Dr. Perelmuter. He merely asserts, without any factual support, that the diagnosis "was forwarded to MD. Perelmuter" and that Dr. Perelmuter "never followed up." Compl. ¶¶ 10–11.

Even reading Mr. Tatem's complaint liberally to raise the strongest argument it suggests, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (collecting cases), Dr. Perelmuter's alleged failure to follow up and, as a result, causing the subsequent infection is—as currently pleaded—too attenuated a causal chain to indicate that his injury is fairly traceable to Dr. Perelmuter's conduct.

To sufficiently plead that some "causal nexus" exists between Dr. Perelmuter's actions and Mr. Tatem's injuries, *Rothstein*, 708 F.3d at 91, Mr. Tatem must at a bare minimum make well-pleaded allegations that Dr. Perelmuter participated in Mr. Tatem's initial diagnosis or

follow-up care. The Complaint does not state any such allegations, nor does the sole medical record that Mr. Tatem has attached to his complaint.

In addition, that medical record suggests that other individuals who may have been involved in his treatment and in analyzing the results of the CT scan, and contains no indication that any diagnosis was forwarded to Dr. Perelmuter. *See* Compl. at 7. The Court therefore cannot determine whether Mr. Tatem asserts that the alleged injuries were caused by Dr. Perelmuter, third parties not before the Court, or both.

Because the Complaint contains no allegations that Dr. Perelmuter treated Mr. Tatem, that Dr. Perelmuter submitted the request for testing of the mass, that Dr. Perelmuter received the results of the CT scan, or that Dr. Perelmuter was in any other way responsible for Mr. Tatem or the care of his jaw, Mr. Tatem has not met his burden in alleging that Dr. Perelmuter's deliberate indifference caused Mr. Tatem's injury. *See Stevens v. Malloy*, No. 3:15-cv-934 (JCH), 2016 WL 3198203, at *8 (D. Conn. June 7, 2016) ("Even assuming *arguendo* that this claim states a cognizable injury-in-fact that would be redressable . . . the court concludes that Mr. Stevens lacks standing to pursue this claim because he has not adequately alleged that his injury is 'fairly traceable' to the actions of [defendant]. Mr. Stevens's theory of causation . . . is pure speculation . . . . insufficient to establish proper causation and Article III standing.") (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 44 (1976)). As Mr. Tatem has not met his burden of demonstrating his standing to sue, the Complaint must be dismissed without prejudice. *See* 28 U.S.C. § 1915A(b)(1).

**IV.  CONCLUSION**

For the reasons stated above, Mr. Tatem's Complaint is **DISMISSED** without prejudice for lack of standing. Mr. Tatem's motion to appoint counsel therefore is **DENIED** as moot. The

Clerk of the Court is respectfully directed to administratively close this case.

The Court grants Mr. Tatem leave to file a motion to re-open, accompanied by an amended complaint that addresses the deficiencies described above. For this case to be re-opened, the Amended Complaint would need to plead facts clarifying the involvement of Dr. Perelmuter as well as allegations that would clarify how Mr. Tatem's injuries are "fairly traceable" to Dr. Perelmuter's conduct.[4] **This motion must be filed within sixty (60) days of the date of this Order.**

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of October, 2018.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge

---

[4] Well-pleaded factual allegations might include, for example: a description of any requests for treatment of Mr. Tatem's lower jaw condition that Mr. Tatem submitted to Dr. Perelmuter prior to July 2, 2015; the dates of any responses to those requests and a description of the treatment provided by Dr. Perelmuter in response to the requests, including medical examinations or tests, referrals to other medical providers or any requests submitted to the URC seeking approval for CT Scans or other imaging of Mr. Tatem's lower jaw condition; the dates and the nature of any requests for treatment submitted by Mr. Tatem after the July 10, 2015 CT Scan; and the dates and type of treatment provided in response to those requests, including the date on which a medical provider diagnosed Mr. Tatem as suffering from an infection in his lower jaw and recommended treatment for the infection. The Complaint should also name any additional individuals who Mr. Tatem claims were involved in his treatment, and who therefore could also arguably be said to have caused his injury, as parties.